IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

JUSTIN R., o/b/o CARLA H.,           )
                                     )
       **Plaintiff**,                 )
                                     )
vs.                                  )   Case No. 21-CV-60-JFJ
                                     )
KILOLO KIJAKAZI,[1]                  )
**Acting Commissioner of Social Security,** )
                                     )
       **Defendant.**                 )

## OPINION AND ORDER

Justin R. ("Plaintiff"), on behalf of decedent Carla H. ("Claimant") seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying Claimant's claim for disability benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), and 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court **AFFIRMS** the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.**    **General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological

---

[1] Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the claimant's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A claimant is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national

economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Claimant, then a 53-year-old female, protectively applied for Title II disability insurance benefits and Title XVI supplemental security income benefits on March 2, 2018, alleging a disability onset date of June 1, 2016. R. 52, 326-344. Claimant claimed she was unable to work due to conditions including major depressive disorder, hyperactive thyroidism, and high blood pressure. R. 362. Claimant's claims for benefits were denied initially on May 30, 2018, and on reconsideration on November 2, 2018. R. 202-262. Claimant then requested a hearing before an ALJ, and the ALJ conducted a hearing on November 13, 2019, at which Claimant chose to appear and testify without assistance of counsel or other representative. R. 167-198. The ALJ issued a

decision on April 1, 2020, denying benefits and finding Claimant not disabled because she could perform other work existing in the national economy.  R. 52-66.  The Appeals Council denied review, and Claimant appealed.  R. 1-4; ECF No. 2.  On October 7, 2021, Claimant's counsel notified the Court of Claimant's death and moved to substitute Claimant's son as Plaintiff.  ECF No. 14.  The Court granted counsel's motion on November 18, 2021.  ECF No. 16.

The ALJ found that Claimant's date last insured was September 30, 2021.  R. 55.  At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since the alleged onset date of June 1, 2016.  *Id.*  At step two, the ALJ found that Claimant had the following severe impairments: bilateral hand neuropathy with essential tremors, obesity, depression, and anxiety.  *Id.*  The ALJ found Claimant's impairments of diabetes mellitus, hypertension, Hashimoto's thyroiditis and/or Riedel's thyroiditis, and vision loss to be non-severe.  *Id.*  At step three, the ALJ found that Claimant had no impairment or combination of impairments that was of such severity to result in listing-level impairments.  R. 56-58.  In assessing Claimant's mental impairments under the "paragraph B" criteria, the ALJ found that Claimant had mild limitations in the area of adapting or managing oneself, and moderate limitations in the three functional areas of understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and interacting with others.  R. 57-58.

After evaluating the objective and opinion evidence and Claimant's statements, the ALJ concluded that Claimant had the RFC to perform medium work with the following limitations:

> no climbing of ladders, ropes or scaffolds and no work involving any exposure to unprotected heights or dangerous moving machinery or sharp objects such as knives or blades.  She can frequently handle and finger.  She is able to understand, remember and carry out simple and detailed, but not complex, tasks (SVP 1-4) and have occasional interaction with supervisors, co-workers, and the general public.  She can perform no tandem or teamwork.

R. 58. At step four, the ALJ found that Claimant was unable to perform any past relevant work. R. 64. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Claimant could perform other medium unskilled work, such as Hand Packager, Laundry Worker, and Garment Hanger. R. 64-65. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"), except for the VE's testimony with respect to exposure to sharp objects and specific types of climbing, which was based on information generally available in the vocational field as well as her professional experience. R. 65. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Claimant was not disabled through the date of decision.

### III. Issues

Claimant raises three allegations of error on appeal, all of which pertain to her alleged bilateral hand tremors: (1) the ALJ failed to properly consider a medical opinion by Syed A. Hussain, M.D.; (2) the RFC determination is not supported by substantial evidence; and (3) the ALJ's step-five finding that other jobs exist that Claimant could perform is not supported by substantial evidence. ECF No. 12 at 3.

### IV. Analysis

#### A. ALJ's Analysis of Dr. Hussein's Treatment Note Was Legally Proper

Claimant argues the ALJ committed reversible error by improperly evaluating a May 13, 2019, treatment note from treating physician Dr. Hussain. *See* R. 635-640 (Dr. Hussain's treatment note).[2] For claims filed after March 27, 2017, such as Claimant's claim, the definition of a

---

[2] Claimant does not clearly cite any particular treatment note or "opinion" from Dr. Hussain. ECF No. 12 at 3-5. However, she refers to the ALJ's discussion of Dr. Hussain's May 13, 2019, treatment note. R. 61. Therefore, the Court concludes Claimant is addressing the May 13, 2019, treatment note.

"medical opinion" has narrowed. A "medical opinion" now constitutes "a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [she] ha[s] one or more impairment-related limitations or restrictions in" enumerated abilities, including the "ability to perform physical demands of work activities" such as manipulative functions, including reaching or handling. 20 C.F.R. §§ 404.1513(a)(2), (a)(2)(i), 416.913(a)(2), (a)(2)(i). When a medical source provides a "medical opinion," the ALJ is required to articulate how persuasive she finds the medical source's opinion, based on the opinion's supportability and consistency. 20 C.F.R. §§ 404.1520c(b), (b)(2), 416.920c(b), (b)(2). Separately from a "medical opinion," the new regulations also provide a definition for "other medical evidence," to constitute evidence including "judgments about the nature and severity of [a claimant's] impairments, [her] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3). When evidence consists of either "other medical evidence" or "objective medical evidence," such as medical signs or laboratory findings, the ALJ need not articulate the persuasiveness of such evidence. *See* 20 C.F.R. §§ 404.1513(a)(1), 404.1520c, 416.913(a)(1), 416.920c.

In this case, treating physician Dr. Hussain had Claimant complete a drawing test on May 13, 2019. R. 635. On the same date, Dr. Hussain noted that Claimant had a "mild-to-moderate action tremor with postural component." R. 636. Dr. Hussain stated there was "no rigidity and bradykinesias" and "no evidence of Parkinsonism at this point," but she had "essential tremor." *Id.* Dr. Hussain stated he would increase her dose of Primidone for better tremor control. *Id.* Dr. Hussain further observed that Claimant had "a moderate kinetic tremor bilaterally left worse than right associated with postural component," which "worsens when [s]he holds [her] arms outstretch

and is especially exacerbated by performing a task such as drawing a spiral, straight line and handwriting." R. 640.

The ALJ noted the drawing test, stating that "it appears this activity was designed to demonstrate the claimant's level of hand steadiness." R. 61. The ALJ stated that the drawing test "appears to show a very serious level of unsteadiness." *Id.* (citing R. 635). The ALJ also noted Dr. Hussain's report of a "moderate kinetic tremor bilaterally left worse than right associated with a postural component," as well as Dr. Hussain's observation that Claimant's tremor worsened when she held her arms outstretched and was especially exacerbated by performing tasks such as drawing a spiral, straight line, and handwriting. *Id.* (citing R. 640). The ALJ further noted Dr. Hussain's report that Claimant had a mild-to-moderate action tremor with postural component, but there was no rigidity, bradykinesias, or evidence of Parkinsonism at that point.

Claimant argues the ALJ's discussion of Dr. Hussain's treatment note was improper, because (1) the ALJ failed to state whether she found Dr. Hussain's statement persuasive, (2) the ALJ failed to note Dr. Hussain's statement that Claimant had essential tremor, and (3) the ALJ incorrectly stated that Dr. Hussain observed a "mild-to-moderate" tremor. ECF No. 12 at 3-5.

Claimant's arguments are unavailing. First, Claimant contends the ALJ failed to treat Dr. Hussain's treatment note as an "opinion" by articulating its persuasiveness. However, in accordance with the revised regulations regarding evaluation of medical "opinions," Dr. Hussain's treatment note does not constitute a "medical opinion" that required a persuasiveness assessment. Dr. Hussain made no comment about what Claimant could still do despite her essential tremor or whether she had any limitations in her manipulative abilities related to her essential tremor. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (defining "medical opinion"). Instead, he made clinical observations regarding the nature and severity of her essential tremor, such as his observation that

7

her tremor worsened when holding her arms outstretched or when performing a task such as drawing or handwriting. R. 640. He assessed her with essential tremor, and he found no evidence of Parkinson's disease. R. 635-640.

In the reply brief, Claimant argues Dr. Hussain's observation that Claimant's tremor worsened when she held her arms outstretched and performed drawing and handwriting tasks constituted a "medical opinion" under the revised regulations. ECF No. 15 at 1. She argues that Dr. Hussain's statement, coupled with Claimant's drawing test samples, show an impairment-related limitation amounting to a "medical opinion." The Court rejects this argument and finds that Dr. Hussain did not give a "medical opinion" but rather provided clinical observations and test results. He did not give any opinions as to whether Claimant had any particular impairment-related limitations or restrictions. Accordingly, the ALJ did not err in declining to provide a persuasiveness assessment regarding the treatment note.

Second, Claimant argues the ALJ erred by not specifically noting Dr. Hussain's finding that Claimant had "essential tremor," while noting that Dr. Hussain found no evidence of Parkinsonism. *See* R. 61 (citing R. 636). Claimant argues that, to the extent the ALJ intended to diminish the severity of the essential tremor by focusing on the lack of Parkinsonism, the ALJ's analysis was "completely unsupported." ECF No. 12 at 4.

The Court identifies no error in the ALJ's analysis. The ALJ accurately noted Dr. Hussain's findings regarding Parkinsonism, and the ALJ discussed Dr. Hussain's observations regarding the nature and severity of her hand tremors. R. 61 (citing R. 635, 636, 640). While the ALJ did not specifically note Dr. Hussain's finding of "essential tremor," the ALJ found Claimant's "bilateral hand neuropathy with essential tremors" to be a severe impairment at step

8

two. R. 55. The ALJ plainly did not ignore Claimant's essential tremor, and the Court finds no error in the ALJ's failure to reproduce every part of Dr. Hussain's treatment note.

Finally, Claimant argues the ALJ erred by stating that Dr. Hussain reported a "mild-to-moderate" tremor. R. 61 (citing R. 636). Claimant argues "the examinations always noted a moderate tremor." ECF No. 12 at 4. Claimant's argument is without merit. Dr. Hussain did, in fact, state that Claimant had a "mild-to-moderate action tremor" in the May 13, 2019, treatment note. R. 636. Later in the treatment note, Dr. Hussain observed Claimant had a "moderate kinetic tremor bilaterally left worse than right associated with postural component." R. 640. However, the ALJ noted this "moderate" finding as well. R. 61 (stating that "[i]t was noted in a concurrent office visit record that there was a moderate kinetic tremor bilaterally left worse than right associated with a postural component"). Accordingly, the Court identifies no error.

**B.     ALJ's Evaluation of Tremors in Determination of RFC Was Proper**

Claimant argues the ALJ's RFC for a range of medium work with additional restrictions was flawed, because the ALJ failed to include sufficient limitations to account for her bilateral hand tremors. In support, Claimant cites records indicating she had bilateral hand tremors, including observations of tremors and handwriting tests showing unsteadiness when drawing spirals and lines. R. 625 (consultative examiner observed in October 2018 that Claimant had tremors "throughout exam present with and without movement"), R. 655 (Dr. Hussain observed in July 2019 that Claimant had a "moderate kinetic tremor bilaterally left worse than right associated with postural component," which "worsens when [she] holds [her] arms outstretched and is especially exacerbated by performing a task such as drawing a spiral, straight line and handwriting"), R. 635, 642 (handwriting test samples).

Claimant argues that, although the ALJ noted the evidence relating to Claimant's tremor, the ALJ's RFC assessment "acts as a rejection of the related limitations." ECF No. 12 at 5.

9

Claimant contends her inability to control her hands necessitated greater limitations than the RFC's restriction to "frequent" handling and fingering, particularly because her tremor increases with activity. In particular, she points to the step-five job of Laundry Worker (DOT 361.685-018), which requires hand uses, such as lubricating machines and potentially mending torn clothes with needle and thread, in excess of what Claimant would be able to perform.

Claimant's argument fails. As Claimant acknowledges, the ALJ considered Claimant's essential tremor and found the impairment of "bilateral hand neuropathy with essential tremors" to be severe at step two. R. 55. In determining the RFC, the ALJ noted Claimant's testimony that her hands shook. R. 59-60. The ALJ noted that, regarding her allegations of debilitating hand and body shaking, a December 2016 physical examination revealed normal neurological findings. R. 60 (citing R. 475). The ALJ noted Claimant reported no musculoskeletal concerns in January 2018, and she testified in November 2019 that she liked to crochet, albeit slower than in the past due to shaking. R. 60 (citing R. 496, hearing testimony). In June 2018, the ALJ noted that Claimant attempted to demonstrate hand tremors to her physician at a psychological appointment, but no tremor was observed, and the physician noted she had a normal gait and no psychomotor agitation. R. 60 (citing R. 519).

The ALJ further reviewed Claimant's history of complaints of worsening tremor, observations and diagnoses by Claimant's care providers and consultative examiner of tremor, and treatment for tremor with medications. R. 60-61. The ALJ found the consultative examiner's October 2018 opinion that Claimant could effectively oppose the thumb to the fingertips, manipulate small objects, and effectively grasp tools such as a hammer to be well supported with and consistent with the consultative examiner's examination, as well as evidence showing Claimant was able to cook, drive, shop, and crochet. R. 61 (citing R. 629). Based on the evidence,

the ALJ concluded that Claimant could perform medium work, except that due to her shaking, neuropathy, and obesity, she should not climb ladders, ropes or scaffolds; should not work at unprotected heights or around dangerous moving machinery; should not work with sharp objects such as knives or blades; and could frequently handle and finger. R. 61.

The ALJ's RFC determination of medium work with various limitations to account for her shaking adequately took Claimant's essential tremors into account. Claimant points to evidence that she experienced hand tremors, which the ALJ discussed, and Claimant points to no specific evidence showing that the ALJ "rejected" necessary limitations to accommodate her hand tremors, such as the ability to control and effectively use her hands. Claimant alleges she would be unable to perform certain tasks required by the Laundry Worker job, but she points to no evidence that the ALJ failed to consider. As the ALJ noted, the consultative examiner concluded Claimant could not only effectively grasp tools such as a hammer, but could also effectively oppose the thumb to the fingertips and manipulate small objects. R. 61 (citing R. 629). Claimant also reported she could cook, drive, and crochet, all of which require use of the hands. R. 61. *See* R. 176-177, 185-186 (hearing testimony).

Claimant fails to identify any specific error in the ALJ's assessment of Claimant's essential tremors or any specific support for additional RFC limitations to accommodate this impairment. Claimant only asks the Court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (explaining that the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo") (cleaned up).

### C. ALJ's Step-Five Findings Were Supported by Substantial Evidence

Claimant argues the ALJ's step-five findings were unsupported by substantial evidence, because the ALJ failed to account for Claimant's inability to directionally control the use of her hands due to tremors. Claimant alleges the ALJ's failure to consider her lack of hand control was borne out in the VE's testimony. She points to a sample job the VE provided, which the VE identified as a "Pricer" (DOT 369.687-018), which requires various manipulative tasks that Claimant alleges she could not perform, given her hand tremors. *See* R. 193 (VE testimony). Elsewhere in her briefing, Claimant alleges she could not perform the "frequent" to "constant" reaching requirements of the step-five jobs. *See* ECF No. 12 at 4.

Claimant's argument is unavailing. For the reasons explained above in Part IV.B, the Court finds the ALJ adequately considered Claimant's hand tremors and appropriately accounted for her tremors in the RFC. As a result, the step-five jobs the VE and ALJ identified were appropriate jobs that could be performed, even with Claimant's hand tremor issues. As for the "Pricer" job, the ALJ did not list that job as an available job at step five. R. 65. As for the three jobs the ALJ did identify – Hand Packager, Laundry Worker, and Garment Hanger – Claimant fails to demonstrate she could not perform the "frequent" to "constant" reaching required by those jobs. Claimant points to Dr. Hussain's observation that her tremor worsened when she held her arms outstretched or performed handwriting tasks. R. 640. However, the ALJ considered this record and still concluded that the RFC limitations accommodated the tremor impairment. Again, Claimant simply asks the Court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax*, 489 F.3d at 1084.

**V.**     **Conclusion**

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is **AFFIRMED.**

**SO ORDERED** this 23rd day of March, 2022

_____
**JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**